UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
**LATASHA TAYLOR**,

                Plaintiff,                Index No.: **22 Civ. 10387**

   -against-

                                        **COMPLAINT**

**NEW YORK CITY HEALTH AND HOSPITALS CORPORATION**,

                Defendant.
------------------------------------------------------------------X

Plaintiff LATASHA TAYLOR by her attorneys, Nicotra Law, PLLC, complaining of Defendant NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, alleges as follows:

**NATURE OF CLAIMS**

On September 14, 2021, Plaintiff LATASHA TAYLOR ("Ms. Taylor") who worked as a Hospital Care Investigator ("HCI") for Defendant NEW YORK CITY HEALTH AND HOSPITALS CORPORATION ("NYCHHC"), was notified that if she failed to comply with the NYS COVID-19 Mandate ("Mandate") that she would be relieved from duty without pay. Though Ms. Taylor was anxious about receiving the vaccine because she had a history of allegoric reactions to medications and had just recently had a severe case of COVID, she agreed to get vaccinated so that she could continue working at NYCHHC. On September 17, 2021, Ms. Taylor reported to the Hospital clinic for vaccination. Within minutes of receiving the first dose of the vaccine, Ms. Taylor suffered a severe allergic reaction and went into and anaphylactic shock. Due to her extreme reaction, Ms. Taylor was applied for, and received, a medical exemption to the Mandate.

Notwithstanding the fact that the NYCHHC granted Ms. Taylor's medical exemption, NYCHHC treated Ms. Taylor as if she had she simply refused the vaccine: Ms. Taylor was relieved

1

from duty without pay and then terminated for her failure to comply with the Mandate. By failing to offer Ms. Taylor a reasonable accommodation that would allow her to continue enjoying the benefits and the privileges of her employment, and by terminating her employment based on her disability, NYCHHC has violated federal, state and city law.

Plaintiff brings the instant action to seek redress for NYCHHC's violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112; the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 (the "NYCHRL").

## PARTIES

1. Plaintiff LATASHA TAYLOR ("Ms. Taylor" or "Plaintiff") is a citizen and resident of the State of New York, and resides in Bronx County, New York. Ms. Taylor was employed by Defendant NEW YORK CITY HEALTH AND HOSPITALS CORPORATION between June 21, 2021, and February 7, 2022.

2. Defendant, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION ("NYCHHC") is an agency of the City of New York engaged in the practice of medicine, with a principal place of business located at 125 Worth Street, New York, New York 10013.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1357, in that Plaintiff is asserting claims under Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U. S.C. § 1367 because these claims closely relate to her ADA claims and arise from a common nucleus of operative facts, such that all claims form part of the same case or controversy.

4. Venue is proper in this district pursuant to 28 U. S.C. § 1391, because Defendants maintain headquarters in the Southern District of New York and the events giving rise to Plaintiff's claims occurred within the Southern District of New York.

5. Plaintiff has complied fully with all administrative prerequisites. Plaintiff timely filed a Notice of Claim with the New York City Comptroller and filed a charge of discrimination against the Defendant with the United States Equal Opportunity Employment Commission (the "EEOC"). On September 25, 2022, Plaintiff received a notice of Right to Sue from the EEOC.

## FACTUAL ALLEGATIONS

6. On June 21, 2021, Ms. Taylor began working for NYCHHC.

7. As an employee of NYCHHC, Plaintiff was covered by the ADA.

8. While employed by NYCCH, Ms. Taylor suffered from severe allergic reactions to medication which substantially limited her ability to breath and resulted in medical emergencies and hospitalizations.

9. Ms. Taylor is disabled within the meaning of the ADA.

10. At all times Ms. Taylor's job performance was satisfactory and she was qualified for her position.

### Hospital Care Investigators

11. Ms. Taylor was hired to work as a Hospital Care Investigator ("HCI"), at Lincoln Hospital, 234 East 149th Street, Bronx, New York, 10451.

12. Upon her hire, NYCHHC provided Ms. Taylor with a Job Description for the position of Hospital Care Investigator.

13. According to that description: HCI's "conduct investigations to determine the ability of patients and their legally responsible relatives to pay for services."

14. The Job Description listed the following duties and responsibilities for an HCI: 1) Conducts investigations to determine the ability of patients and their responsible relatives to pay hospital charges. 2) Performs billing and collection functions in order to maximize revenue. 3) Facilitates Medicaid revenue by processing application$ or bills timely. 4) Verifies/bills all available insurance. 5) Inputs data into the EPIC system and ensures its accuracy. 6) Contacts other agencies to obtain or verify relevant information. 7) Documents the account appropriately. 8) Acts as a liaison to other departments within the facility.

15. The duties and responsibilities of an HCI can be performed remotely.

16. Beginning in March of 2020 and continuing until the fall of 2021, NYCHHC had a system in place that allowed the HCIs to access hospital files remotely so that they could work from home.

17. Throughout 2020 and continuing into 2021, HCIs performed all work remotely.

18. Between the spring and summer of 2021, NYCHHC allowed HCI's to work a hybrid schedule which included remote and in-person work.

19. Upon her hire with NYCHHC Ms. Taylor worked in the Fast Money Unit ("FMU"), with approximately five other HCIs.

20. When Ms. Taylor started working in the FMU in June of 2021, the five other HCIs worked on a hybrid schedule, three days a week in-person and two from home.

21. The vast majority of the HCI's work, consisting of inputting data and contacting insurance carriers, can be done remotely.

22. Occasionally, HCIs in the FMU had to collect information and signatures from admitted patients.

23. While Ms. Taylor was employed in FMU, the HCIs who were scheduled to work in-person collected signatures from patients assigned to their colleagues on the days when those colleagues were working remotely.

24. Upon information and belief, as late as December of 2021, NYCHHC allowed HCIs to continue working on a hybrid remote schedule.

25. Upon information and belief, while Ms. Taylor was employed, NYCHHC allowed one HCI to work remotely on a full-time basis to accommodate childcare needs.

### Plaintiff's Medical Exemption and Termination:

26. On September 8, 2021, NYCHHC asked Ms. Taylor why she was not yet vaccinated for COVID-19.

27. Ms. Taylor explained that she was nervous about the vaccination because she had suffered allergic reactions to vaccines in the past and had suffered a severe case of COVID-19 in the spring of 2021, which resulted in hospitalization.

28. On September 14, 2021, NYCHHC presented Ms. Taylor with a form notifying her that if she did not provide proof of vaccination by September 27, 2021, she would be relieved from duty without pay pending her compliance with the Mandate.

29. On September 17, 2021, Ms. Taylor reported to Lincoln's vaccine clinic to receive her first dose of the Pfizer vaccine.

30. Within minutes of receiving the injection, Ms. Taylor suffered a severe allergic reaction, went into anaphylactic shock, and was immediately admitted to the emergency room where she given steroid, antihistamine, and epinephrin injections and intravenous fluids.

31. Ms. Taylor's discharge papers stated that she was admitted due to "anaphylaxis."

32. On September 23, 2021, Ms. Taylor sought a medical exemption from the Mandate and submitted a note from her doctor stating that due to her "anaphylaxis reaction" to the first Pfizer dose, that Ms. Taylor "should not receive the 2nd dose of the vaccine or any other COVID vaccines."

33. Pursuant to N.Y. Comp. Codes R. & Regs. tit. 10 § 2.61, (Prevention of COVID-19 transmission by covered entities), "Personnel shall be exempt from the COVID-19 vaccination requirements…[i]f any licensed physician, physician assistant, or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be <u>inapplicable</u> only until such immunization is found no longer to be detrimental to such personnel member's health." §2.61 further states that "any reasonable accommodation may be granted and must likewise be documented in such record."

34. The NYCHHC's FAQ on the COVID-19 states that "CDC considers Severe allergic reaction (e.g., anaphylaxis) after a previous dose or to a component of the COVID-19 vaccine….to be a contraindication to vaccination with COVID-19 vaccines."

35. On September 27, 2021, just four days after she requested a medical exemption, NYCHHC called Ms. Taylor during her shift and informed her that she was being relieved from duty for failure to comply with the Mandate.

36. As of September 27, 2021, Ms. Taylor was in full compliance with the mandate in that she was not yet eligible for her second dose of the vaccine.

37. Ms. Taylor immediately complained to Human Resources that she had submitted a request for a medical exemption and that more significantly she was not even eligible for the second dose until October 8, 2021.

38. HR told Ms. Taylor that nothing could be done and was she directed to leave the hospital.

39. Instead of leaving the premises, Ms. Taylor went to the office of CFO Christopher Roker ("Mr. Roker"). Upon learning of Ms. Taylor's situation, specifically that she was currently in compliance, Mr. Roker took immediate action and had Ms. Taylor reinstated.

40. On October 5, 2021, NYCHHC provided Ms. Taylor with a letter stating that her exemption request had been granted for the period starting on October 8, 2021, and ending on December 7, 2021, due to her "medical condition."

41. Though NYCHHC granted Ms. Taylor's request for a medical exemption, NYCHHC relieved her from duty and placed her on an unpaid leave pending her compliance with the Mandate.

42. NYCHHC's conduct—placing the Plaintiff on leave without pay, pending receipt of a second dose of a COVID vaccine which she was medically precluded from receiving—was not an accommodation but a delayed termination.

43. Ms. Taylor was in the same exact position – on leave without pay – that she would be in had she refused to take the vaccine and had not been approved for a medical exemption.

44. Though Ms. Taylor had previously had COVID and had received one dose of the vaccine, the letter from NYCHHC stated, "[t]he System has determined that the presence of unvaccinated staff at System work locations poses an undue burden and a direct threat to System staff and patients."

45. The EEOC issued the following guidance to determine if an unvaccinated employee poses a "direct threat" in the workplace: An employer first must make an individualized assessment of the employee's present ability to safely perform the essential functions of the job. The factors that make up this assessment are: (1) the duration of the risk; (2) the nature and severity of the potential harm; (3) the likelihood that the potential harm will occur; and (4) the imminence of the potential harm."

46. NYCHHC did not conduct an individualized assessment to determine whether Ms. Taylor, having received one dose of the vaccine and having recently recovered from COVID, posed a "direct threat" to others.

47. Upon learning of Ms. Taylor's disability and granting her medical exemption, NYCHHC failed to engage in an interactive process with Ms. Taylor to determine whether her requested accommodation to work remotely, was reasonable.

48. The EEOC issued guidance on accommodating unvaccinated individuals: "Potential reasonable accommodations could include requiring the employee to wear a mask, work a staggered shift, making changes in the work environment (such as improving ventilation systems or limiting contact with other employees and non-employees), permitting telework if feasible, or reassigning the employee to a vacant position in a different workspace."

49. NYCHHC did not consider whether changes to Ms. Taylor's workspace, schedule or assignment would allow Ms. Taylor to continue working at NYCHHC.

50. Instead, NYCHHC stated, "after a review of your essential job functions and potential reasonable accommodations, this Office has determined that there is no alternative accommodation that would allow you to perform your essential job functions."

51.     However, the essential job functions of an HCI could, and were currently being performed, in part, remotely.

52.     NYCHHC did not offer Ms. Taylor the option to work remotely despite the fact the NYCHHC had a system in place whereby HCIs could work remotely and had previously allowed HCIs to work from home.

53.     On December 8, 2021, Ms. Taylor, due to her medical condition, was still unable to receive the second dose of the vaccine.

54.     On December 9, 2021, NYCHHC sent Ms. Taylor an email stating, "Be advised that our records indicate that you have not complied with the New York State Mandated COVID-19 Vaccination second dose. The letter further stated, "If you are not fully vaccinated by Friday, December 17, 2021, your employment with NYC Health + Hospitals will be separated."

55.     Half an hour later, Ms. Taylor received an email from NYCHHC stating, "Please disregard, as we have recently been informed that your accommodation has been extended to 12/31/2021."

56.     On January 6, 2022, Ms. Taylor received another communication from NYCHHC stating that if she did not show proof that she received the second COVID-19 vaccine by January 14, 2022, she would be separated from employment.

57.     On January 11, 2022, NYCHHC sent Ms. Taylor an email stating that her accommodation ended on 12/31/2021, and that if she did not provide proof of compliance with the mandate by February 7, 2022, her employment would be terminated.

58.     On February 7, 2022, Ms. Taylor provided NYCHHC with an additional letter from her doctor and requested once again a remote work assignment. The Doctor's note included the following: "Ms. Taylor was given the Pfizer vaccine…on 9/17/21. She suffered a Anaphylaxis

9

reaction that resulted her going to the ED where she was given an Epi pen and Prednisone. She then saw immunology on 1/27/22 at Mount Sinai. The provider also recommended that Ms. Taylor should not receive another dose of the MRNA COVID Vaccine. She also can't receive the J&J vaccine, given her history of blood clots."

59. NYCHHC responded via email refusing to provide Ms. Taylor the opportunity to work remotely and/or to return to work in any capacity.

60. NYCHHC terminated Ms. Taylor's employment on February 7, 2022.

61. NYCHHC conduct caused Ms. Taylor to suffer financial and emotional harm and caused harm to Ms. Taylor's career.

## FIRST CAUSE OF ACTION
### (Disability Discrimination under the ADA)

62. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "61" above, with the same force and effect as if fully set forth herein.

63. The Americans with Disabilities Act ("ADA") prohibits discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. §§ 12112.

64. At all relevant times, Ms. Taylor suffered severe allergies to the medications and vaccines including the COVID-19 vaccine, which impaired her ability to breath resulting in medical emergencies.

65. Ms. Taylor was disabled within the meaning of the ADA.

66. Ms. Taylor is a qualified individual, possessing the requisite skills needed for performing her duties at the time of Defendant's adverse decision.

67. Based on her severe reaction to the first dose of the vaccine, Defendant granted Ms. Taylor a medical exemption from the Mandate.

68. Defendant failed to offer Ms. Taylor a reasonable accommodation that would have allowed Ms. Taylor to enjoy the benefits and privileges of continue employment.

69. Defendant discriminated against Ms. Taylor by refusing to engage in an interactive process with Ms. Taylor and by refusing to accommodate her disability.

70. Defendant discriminated against Ms. Taylor by relieving her from duty on October 8, 2021.

71. Defendant discriminated against Ms. Taylor on the basis of her disability by terminating her employment on February 7, 2022.

72. Defendant's refusal to provide a reasonable accommodation for Ms. Taylor's disability constituted unlawful intentional discrimination in violation of 42 U.S.C. § 12112(b)(5)(A).

73. Defendant's termination of Ms. Taylor constituted unlawful intentional discrimination in violation of 42 U.S.C. § 12112(a).

74. As a result of Defendant's intentional and willful discrimination, Ms. Taylor has suffered substantial economic, and emotional harm, and damage to her career.

75. Accordingly, Ms. Taylor is entitled to compensatory and consequential damages and interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages.

## SECOND CAUSE OF ACTION
### (Disability Discrimination under New York State Human Rights Law)

76. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "75" above, with the same force and effect as if fully set forth herein.

11

77. The New York State Human Rights Law ("NYSHRL"), Section § 296, prohibits unlawful discriminatory employment practices based on disability.

78. Ms. Taylor suffered from a disability as defined by the NYSHRL.

79. Defendant violated the NYSHRL by failing to engage in an interactive process with Ms. Taylor following her request for an accommodation.

80. Defendant discriminated against Ms. Taylor by not providing Ms. Taylor with a reasonable accommodation that would have allowed her to continue her employment with NYCHHC.

81. Defendant violated the NYSHRL by terminating Ms. Taylor based on her disability.

82. As a result of Defendant's intentional and willful discrimination, Ms. Taylor has suffered egregious emotional and substantial financial harm.

83. Accordingly, Ms. Taylor is entitled to compensatory and consequential damages and interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages.

**THIRD CAUSE OF ACTION**
**(Disability Discrimination under New York City Human Rights Law)**

84. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "83" above, with the same force and effect as if fully set forth herein.

85. Pursuant to NY Admin. Code §8-130, the New York City Human Rights Law ("NYCHRL") "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed."

86. Under the NYCHRL, it is an unlawful discriminatory practice to discriminate against an employee in the terms, conditions, or privileges of employment because of the employee's disability. NYC Admin. Code § 8-107(1)(a).

87. Ms. Taylor suffered from a disability as defined by the NYCHRL.

88. Defendant violated the NYCHRL by failing to engage in an interactive process with Ms. Taylor following her request for an accommodation.

89. Defendant discriminated against Ms. Taylor by not providing Ms. Taylor with a reasonable accommodation that would have allowed her to continue her employment with NYCHHC.

90. Defendant violated the NYCHRL by terminating Ms. Taylor based on her disability.

91. Defendant's conduct was intentional, malicious and/or otherwise in reckless disregard of Ms. Taylor's protected rights in violation of the New York City Human Rights Laws, N.Y.C. Admin. Code Section 8-107.

92. As a result of Defendant's intentional discrimination, Ms. Taylor has suffered financial and emotional harm and injury to her career.

93. Accordingly, Ms. Taylor is entitled to compensatory and consequential damages and interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages.

**DEMAND FOR TRIAL BY JURY**

1. Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Court enter judgment against Defendants awarding Plaintiff:

A. On the FIRST CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

B. On the SECOND CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

C. On the THIRD CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

D. Such other and future relief that this Honorable Court deems just and proper.

Dated: New York, New York
December 8, 2022

Nicotra Law, PLLC:

_____
Rachel Nicotra, Esq.
1115 Broadway, 12th Floor
New York, NY 10010
(646) 462-3960
*Attorneys for Plaintiff*